UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. MARK BERMAN,

       Plaintiff,

vs.                                       Case No.  14-CV-

UNUMPROVIDENT CORPORATION,
A Foreign Insurance Corporation,

       Defendant.

_____/

Matthew L. Turner (P48706)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
One Towne Square, 17th Floor
Southfield, MI  48076
(248) 355-0300
mturner@sommerspc.com
_____/

**COMPLAINT**

      The Plaintiff, Dr. Mark Berman, by his attorneys, SOMMERS SCHWARTZ, P.C., complains against the above-named Defendant, and states as follows:

JURISDICTION AND VENUE

      1.    Dr. Mark Berman is a resident of the City of Bloomfield Hills, County of Oakland, and State of Michigan.

      2.    Defendant, UnumProvident Corporation, is a Delaware corporation, which continuously and systematically conducts business in the State of Michigan, through their solicitations and sales of disability and other insurance policies.

      3.    Plaintiff is a citizen of Michigan and the Defendants are foreign corporations which are incorporated outside the State of Michigan.  Further, none of the Defendants'

principal places of business are within the State of Michigan.  The amount in controversy, without interest and costs, exceeds $75,000.00, and, therefore, this Court has original jurisdiction under 28 U.S.C. §1332.

4.      The events giving rise to this cause of action occurred in the City of Bloomfield Hills, County of Oakland, and State of Michigan.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

<u>BREACH OF CONTRACT</u>

6.      Dr. Mark Berman is a licensed dentist in the State of Michigan who has maintained a dental practice located at 44200 Garfield Rd. Suite 100, Clinton Township, MI known as Mark D. Berman, DDS & Associates.

7.      Plaintiff, Mark D. Berman, D.D.S., is the sole shareholder in Mark D. Berman, D.D.S. & Associates, P.C.

8.      Beginning in 1986, Dr. Berman began applying for and purchasing Disability Income Protection Insurance Policies from Provident Life and Accident Insurance Company and later from UnumProvident Corporation.

9.      UnumProvident Corporation is a successor company to Provident Life and Accident Insurance Company and is legally responsible for the policies sold by Provident Life and Accident Insurance Company.

10.     Policy Number 796691 became effective on or around September 1, 1987.

11.     Policy Number 599677 became effective on or around February 1, 1995.

12.     Policy Number 412556 became effective on or around February 1, 1995.

13.     Policy Number 722913 became effective on or around September 1, 1997.

14.     The premiums for each policy were paid and each policy remained in effect through the date that Dr. Berman made a claim for Residual Disability benefits.

15.     Each policy provided for Residual Disability benefits.  The definitions were slightly different but in essence under each policy Dr. Berman is entitled to benefits if he cannot perform one or more of his substantial duties as a dentist due to injury or sickness and has a loss of monthly income of at least 20%.

16.     Each policy at issue was purchased by Dr. Berman individually and he was the only beneficiary under each of the policies.  As a result of the fact that Dr. Berman is the only beneficiary under the policies, the policies are not governed by the provisions of the Employment Retirement Income Security Act ("ERISA"), 29 USC § 1001 et seq.

17.     Dr. Berman suffers from a number of ailments including diabetes, acoustic neuroma resulting in complete loss of hearing in his left ear, L4 and L5 disc herniation, vertigo, and peripheral neuropathy, among other ailments.

18.     Dr. Berman has received and is continuing to receive regular and personal care from a number of physicians including an internal medicine specialist, neurologist, and otolaryngologist, among other specialties.

19.     On March 29, 2010 Dr. Berman made a claim for residual disability insurance benefits under the provisions of the above referenced insurance policies.

20.     The claim was assigned the following claim numbers: 5200599677002, 52-00722913-002, 52-00796691-002 and 52-04125556-002.

21.     Each claim number represented a claim under each of the four policies of disability insurance that had been purchased by Dr. Berman from Provident and/or UnumProvident.

22.     Defendant conducted an investigation of the claim between March 29, 2010 and September 1, 2010 when Daniel J. Pokraka sent a letter to Dr. Berman on behalf of UnumProvident informing Dr. Berman that his claim for Residual Disability benefits under the sickness provisions of his individual disability policies had been approved.

23.     As a result of Defendant's investigation into Dr. Berman's medical conditions and restrictions, along with a review of his job description, it was determined that his current restrictions of working no more than 25 hours a week were reasonable.

24.     Included with the letter of September 1, 2010 were benefit checks under each of the four different policies of insurance under which Dr. Berman had made a claim for benefits.

25.     Dr. Berman was instructed to provide the Defendant with monthly P & L's for each month going forward to calculate his current monthly income so that his monthly benefit amount could be calculated.

26.     On September 22, 2010, Dr. Berman received a letter from a new lead benefits specialist which indicated that he did not qualify for benefits for the month of August because he only had a 3.57% loss in earnings.  The letter also indicated that for the post disability period, Dr. Berman had a decrease in his level of work by 8% in April, 10% in May, and 31% in June 2010.  The letter indicated that for the same period the loss in earnings were 100%, 41%, and 27%.  For the months of April and May 2010, the Defendant found the "variance unreasonable."

27.     On November 24, 2010 UnumProvident wrote to Dr. Berman again comparing his "units" worked in 2009 to his "units" worked in 2010 which was also compared to Dr. Berman's loss of income.  Defendant seemed to contend that since the "units" were relatively similar the drop in income was not explainable due to Dr. Berman's disability.

28.     None of the at-issue policies contain any language which ties the payment of benefits to the number of "units" worked.  The critical language in the policies is a 20% loss of income.

4

29.     Dr. Berman suffered a loss of income of greater than 20% from his pre-disability income for April 2010, May 2010, June 2010, July 2010 and September 2010 as documented in the November 24, 2010 letter.

30.     On December 30, 2010, Dr. Berman wrote to the lead disability specialist who was handling his claim and explained that the measurement of units vs. revenue is not mutually inclusive or consistent.  Each unit generates different revenue per unit as well as time commitment.

31.     In the December 30th letter, Dr. Berman provided examples of how units do not correspond to revenue or amount of time worked.

32.     It takes Dr. Berman 10-15 minutes to perform a surgical extraction which generates $376.00 of production.  It takes Dr. Berman 30 minutes to perform a child's filling which generates $137.00 of production.   The child's filling takes twice the time and generates less than half the production.

33.     Comparing the months of June and September 2010, there is only one unit difference between the months, but September generated $22,000 more in revenue.

34.     Each and every month after March of 2010, Dr. Berman was working less than full time due to his disability.  Therefore his income, i.e., production, was less for each and every month due to his disability.

35.     On February 11, 2014, Defendant informed Dr. Berman that it would not be able to continue payment of his residual disability benefits under any of his claims.

36.     Dr. Berman received partial disability benefits through December 1, 2010.

37.     In the February 11, 2011 denial letter, the Defendant stated: "upon review of your ADA codes, we find that you are generating gross charges that are comparable to your pre-disability level of production.  When we take into consideration your monthly loss of earnings, we find that your monthly losses are greater than expected.  Based upon your

5

explanation, we do not find evident that your monthly loss in earnings are related to your medical condition. Therefore, you would not qualify under the residual disability provisions of your policies."

38.     Defendant specifically indicates that Dr. Berman's restrictions and limitations of working no more than 25 hours a week, no climbing, twisting, bending, stooping, reaching above shoulder level, operate heavy machinery and no lifting over 20 lbs., was medically supported.

39.     In the February 11, 2011 letter, Defendant specifically indicated that for every month other than August, Defendant qualified financially to receive a residual benefit. Despite this finding the Defendant did not pay Dr. Berman benefits based upon the statement that "we do not have a clear understanding as to why your loss in monthly earnings is greater than the percentage difference in charges. We can only assess that the inconsistency is not in relation to your ongoing medical condition." Therefore, we do not find you to be eligible under the Residual Disability provision of your policy."

40.     On July 7, 2011, Dr. Berman appealed the decision to deny his claim by written correspondence to Defendant.

41.     The appeal letter explained that the Defendant overlooked the fact that the disparity between practice earnings and units of work or charges was comprised of total revenues from Dr. Berman's entire practice, including the earnings generated by two associate dentists.

42.     As part of the appeal, additional medical and financial information was provided to Defendant, UnumProvident.

43.     On September 12, 2011, Defendant wrote to Dr. Berman's attorney and indicated that they had decided to continue their evaluation of the loss of earnings as it relates to ongoing disability.

44.     In the September 12, 2011 letter, Defendant stated "[s]ince we have receipt Profit and Loss figures that cover the period December 2010 through March 2011, we are able to provide a residual benefit for these months.  However, prior to issuing a residual benefit we are in need of additional information for the months of December 2010, as well as for the months o9f January through March 2011."

45.     Defendant further requested that an independent accounting firm conduct an "audit" of Dr. Berman's practice.

46.     On November 8, 2011, Dr. Berman, through counsel, provided UnumProvident with the requested Revenue Analysis and Summary, updated P&L/Revenue summaries through August 2011, an accounts receivable report current through October 31, 2011, an explanation of his share of the pension contribution, and an executed individual disability status update signed by Dr. Berman and his physician.

47.     On November 22, 2011, Defendant wrote to Dr. Berman's attorney and indicated that they had calculated the loss of earnings for the period of December 2010 through August 2011.  It was determined that Dr. Berman did not meet the required loss per the terms of the policies for the months of May and August 2011.  It was determined that he was entitled to benefits for the months of December 2010, January 2011, February 2011, March 2011, April 2011, June 2011, and  July 2011.

48.     Defendant requested additional information to determine Dr. Berman's benefits for the period of September through October of 2011.

49.     On December 19, 2011, Dr. Berman, through counsel, provided UnumProvident with the documentation they sought through November 2011.

50.     On January 16, 2012, Defendant received the results of the audit performed by Nawrocki Smith LLP as it relates to Dr. Berman's post disability loss of income.

7

51.     The audit found that for the months of April, July, October, November, and December of 2010, Dr. Berman had a monthly loss of income that was greater than 20%. The audit also found that for the months of January, February, and March of 2011, Dr. Berman had a loss of income greater than 20% for each month.

52.     On January 25, 2012, Defendant wrote to counsel for Dr. Berman and indicated that he did not qualify for benefits for the months of September and October of 2011, but that he did qualify for benefits for the month of November 2011.  Defendant also requested additional information for the months of December 2011 and January 2012.

53.     On March 14, 2012, Nawrocki Smith LLP updated their analysis based upon additional information provided.  The audit found that during the period of January 2011 through December 2011 that Dr. Berman experienced a decrease in income greater than 20%, in fact 28.66%.

54.     On April 16, 2012, the Defendant denied the Plaintiff's claim and indicated that no further benefits would be paid.  The denial was based upon the analysis done by Nawrocki Smith LLP.  Specifically, Defendant stated that "[o]ur analysis of that data does not support your claim that Dr. Berman's loss of earnings is due to his residual disability."

55.     On April 17, 2012, UnumProvident corresponded with counsel for Dr. Berman and indicated that the disability claim had been referred for continuation of appellate review.

56.     On May 16, 2012 the Quality Performance Support Unit, which was performing the appellate review of the claim, wrote to counsel for Dr. Berman requesting additional information necessary to evaluate the appeal including tax returns, QuickBooks accounting data, Detailed ledgers, Payroll documentation, monthly procedure code summary, and statement identifying the employee/contractor for all provider codes.

57.     Dr. Berman, through counsel, provided all of the documentation requested by the Defendant.

58.     Defendant received an updated audit from Nawrocki Smith LLP dated October 5, 2012.

59.     On October 17, 2012, Defendant completed the appeal review on Dr. Berman's claim and determined that the decision to deny benefits was correct.  Defendant relied upon the analysis by an accounting firm to conclude that "the loss of monthly income suffered by Dr. Berman is not due to his medical condition."

60.     In the letter dated October 17, 2012, Defendant concluded that the loss in income suffered by Dr. Berman "has primarily been due to the substantial decrease in services provided by other dentists in your practice (i.e. Dr. William Pourcho, Dr. Duane Allen etc.).

61.     Subsequent to the October 17, 2012 letter, counsel for Dr. Berman submitted additional information to the Defendant to address the concerns raised in the denial letter.

62.     On May 14, 2013, Defendant sent a final letter dismissing the concerns raised by counsel for Dr. Berman and continued to conclude that Dr. Berman's loss of income was not due to his disability but was due to "Dr. Pourcho's leaving the business, and the resultant loss of Dr. Pourcho's production and income."

63.     The Defendants decision to deny benefits was based on a faulty analysis of the information provided.

64.     Dr. Berman is under the regular and personal care of a physician for medically identifiable illnesses that result in restrictions on his activities and make him unable to work full time in his chosen profession of dentistry.

65.     As a result of Dr. Berman's disability and the resultant inability to work full time, he has suffered a loss of income greater than 20% in most months post disability.

66.     As a result of Dr. Berman's disability he is entitled to payment of benefits under each of the above referenced policies of insurance under the residual disability benefits provision.

67.     Defendant has wrongfully refused to pay Dr. Berman the benefits he is rightfully owed under each of the policies of disability insurance

PENALTY INTEREST

68.     Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as though fully set forth herein.

69.     On or about March 29, 2010, Plaintiff made a claim for disability benefits under the aforementioned polices of disability insurance.

70.     Plaintiff provided the Defendant with all relevant information requested by the Defendant.

71.     Defendant paid benefits in 2010 and 2011 but refused to pay any further benefits after November of 2011.

72.     Defendant denied Plaintiff's claim by letter dated April 16, 2012.

73.     Nothing changed in regards to Plaintiff's medical status, functional status, or his entitlement to benefits under the policies of insurance after November of 2011 from what they had been prior to November of 2011.

74.     Defendant has wrongfully breached the contracts of disability insurance that existed between Dr. Berman and UnumProvident as of March 29, 2010.

75.     Plaintiff has been harmed by Defendant's breach and has suffered a loss of substantial monies owed to him.

76.     The Defendant has unreasonably refused to pay this claim after November of 2011.

**10**

77.     Plaintiff is entitled to interest at 12% per annum as a result of Defendant's unreasonable refusal to pay, pursuant to MCLA 500.2006.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against UnumProvident, for the full amount of residual disability benefits he is owed for each month subsequent to March 2010, said amount to be in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, along with 12% penalty interest under Michigan law, in addition to pre-judgment interest, post judgment interest, costs and attorney fees.

SOMMERS SCHWARTZ, P.C.

By:     /s/ Matthew L. Turner
        Matthew L. Turner (P48706)
        Attorneys for Plaintiff
        One Towne Square, 17th Floor
        Southfield, MI  48076
        (248) 355-0300
        mturner@sommerspc.com

Dated:  July 11, 2014

**11**